**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

JARVIS JONES                                                                      PLAINTIFF

v.                                    NO.  2:07cv00107 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                  DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Jarvis Jones, has appealed the final decision of the Commissioner of the

Social Security Administration to deny his claim for Supplemental Security Income as a

disabled child.[1]  Both parties have submitted appeal briefs and the case is ready for

decision.[2]

The Court's function on review is to determine whether the Commissioner's decision

is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); <u>Moore</u>

<u>ex rel. Moore v. Barnhart</u>, 413 F.3d 718, 721 (8th Cir. 2005); <u>see</u> <u>Young v. Shalala</u>, 52 F.3d

200, 201-02 (8th Cir. 1995)(substantial evidence review in child benefits case).  Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Moore ex rel.</u>

<u>Moore v. Barnhart</u>, 413 F.3d at 721.

In assessing the substantiality of the evidence, the Court must consider evidence

that detracts from the Commissioner's decision as well as evidence that supports it; the

Court may not, however, reverse the Commissioner's decision merely because substantial

evidence would have supported an opposite decision.  <u>Sultan v. Barnhart</u>, 368 F.3d 857,

863 (8th Cir. 2004); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993).

---

[1]The application was filed on Plaintiff's behalf by his mother.  (Tr. 48-50.)  The usual, and better, practice is for this appeal to be brought by the mother as plaintiff on behalf of the child.  However, the Court is satisfied that it is not necessary to appoint a guardian ad litem under the circumstances of this case.  <u>See</u> Fed.R.Civ.P. 17(c).

[2]The parties have consented to the jurisdiction of the Magistrate Judge (doc. 8).

The Commissioner found Plaintiff not disabled within the meaning of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial evidence.

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c (a)(3)(C)(i) (1996).

After conducting an administrative hearing, the Administrative Law Judge[3] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time from April 19, 2004, the date of the application, through December 29, 2006, the date of his decision.  (Tr. 22.)  On June 19, 2007, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 4-7.)

Plaintiff then filed his complaint initiating this appeal (doc. 1).  After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

At the time of the administrative hearing, Plaintiff was 13 years old, and a student entering the eighth grade.  (Tr. 187.)  In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults.  20 C.F.R. § 416.924(a) (2006).

The first step is a determination whether the child is engaged in substantial gainful activity.  Id., § 416.924(b).  If so, benefits are denied; if not, the evaluation continues to the

---

[3]The Hon. Everet Dail Stiles.

next step.

The second step involves a determination whether the impairment or combination of impairments is severe, i.e., more than a slight abnormality that causes no more than minimal functional limitations.  Id., § 416.924(c).  If not, benefits are denied; if so, the evaluation continues.

The third step involves a determination whether the child has impairment(s) that meet, medically equal or functionally equal in severity a Listed impairment.  Id., § 416.924(d).  If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

The ALJ found that Plaintiff had never engaged in substantial gainful activity.  (Tr. 16.)  He determined that he did have "severe" impairments, a specific learning disability, an auditory comprehension delay, a history of tightness of the left heel cord, status post excision of the left calf vascular malformation and attention deficit hyperactivity disorder, but that he did not have any impairment or combination of impairments that met or medically equaled a Listing or that functionally equaled a Listed impairment.  Id. Consequently, he found that Plaintiff was not disabled.  (Tr. 22.)

Since Plaintiff had "severe" impairments, but they did not meet or medically equal a Listing, it was necessary for the ALJ to determine if the impairments functionally equaled a Listing.  20 C.F.R. § 416.926a(a) (2006).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the Welfare Reform Act), P.L. 104-193, 110 Stat. 2105 (codified in scattered sections of 42 U.S.C.), required implementing regulations.  One significant change that the final regulations made from the interim final regulations is the manner of determining functional equivalence.  There is now a single method of evaluating functional equivalence based only on domains of functioning.  Under this regulation, an impairment is functionally equivalent to a Listing when the impairment results in "marked" limitations in two domains

3

of functioning or an "extreme" limitation in one domain of functioning.  Id.

A "marked" limitation in a domain is one that seriously interferes with a child's ability to independently initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(2) (2006). It also means a limitation that is "more than moderate" but "less than extreme."  Id.  It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  Id.

An "extreme" limitation in a domain is one that very seriously interferes with a child's ability to independently initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(3) (2006).  "Extreme" limitation also means a limitation that is "more than marked."  Id.  It is the rating given to the worst limitations.  Id.  It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean.  Id.

The domains of functioning are:

1) Acquiring and using information;

2) Attending and completing tasks;

3) Interacting and relating with others;

4) Moving about and manipulating objects;

5) Caring for yourself; and

6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-vi) (2006).  These domains are described in greater detail, with examples, in the regulations.  20 C.F.R. § 416.926a(g)-(l) (2006).

The ALJ found that Plaintiff had less than marked limitation of function in the domains of acquiring and using information, attending and completing tasks and moving about and manipulating objects.  (Tr. 17-20.)  He found no limitation of function in the domains of interacting and relating with others, caring for yourself and health and physical well-being.  (Tr. 19-22.)

4

Plaintiff raises only one issue on appeal.  He argues that his score on the Clinical Evaluation of Language Fundamentals-3 (CELF-3) amounts to a "marked" or "extreme"[4] limitation in the domain of acquiring and using information.  (Br. 4-5.)  In August 2004, Plaintiff was administered the CELF-3.  (Tr. 110-11.)  His receptive language score was 69. (Tr. 111.)  The speech language pathologist who administered the test indicated, "This score is more than 2 standard deviations below the norm-referenced score of 100, indicating a severe delay in auditory comprehension when compared to normally developing children in his age group." Id.  Two standard deviations below the mean would be 70.  See England v. Astrue, 490 F.3d 1017, 1021 (8th Cir. 2007) (IQ test had testing mean of 100 and standard deviation of 15).

As Defendant points out, Plaintiff's receptive language score does not represent his overall performance on the CELF-3.  His total language score was 77, significantly less than two standard deviations below the mean.  Id.  Plaintiff offers no authority or argument in support of his contention that a score of two standard deviations below the mean on one portion of a speech and language evaluation translates into a "marked" limitation of functioning in the domain of acquiring and using information.  The regulations do not favor such heavy reliance on test scores:

> (4) *How we will consider your test scores.*  (i) As indicated in § 416.924a(a)(1)(ii), we will not rely on any test score alone.  No single piece of information taken in isolation can establish whether you have a "marked" or an "extreme" limitation in a domain.
>
> (ii)  We will consider your test scores together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others.
>
> (A)  We may find that you have a "marked" or "extreme" limitation when you have a test score that is slightly higher than the level provided in paragraph (e)(2) or (e)(3) of this section, if other information in your case record shows that your functioning in day-to-day activities is seriously or very seriously limited because of your impairment(s).  For example, you may have

---

[4]Plaintiff's brief refers to "marked" or "severe" limitation of function.  (Br 4, 5.)  It is clear that he meant "marked" or "extreme."

IQ scores above the level in paragraph (e)(2), but other evidence shows that your impairment(s) causes you to function in school, home, and the community far below your expected level of functioning based on this score.

(B)  On the other hand, we may find that you do not have a "marked" or "extreme" limitation, even if your test scores are at the level provided in paragraph (e)(2) or (e)(3) of this section, if other information in your case record shows that your functioning in day-to-day activities is not seriously or very seriously limited by your impairment(s).  For example, you may have a valid IQ score below the level in paragraph (e)(2), but other evidence shows that you have learned to drive a car, shop independently, and read books near your expected grade level.

20 C.F.R. § 416.926a(e) (2006).

The Commissioner treats the results of IQ tests the same way.  An IQ test is useful in determining whether an applicant has a mental impairment, but other information in the record which indicates the individual's ability to function can be used to discredit the lone IQ score.  Holland v. Apfel, 153 F.3d 620, 621-22 (8th Cir. 1998).  The Commissioner is not required to accept a claimant's IQ scores, and may reject scores that are inconsistent with the record.  Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998).  Indeed, test results of this sort should be examined to assess consistency with daily activities and behavior.  Id.

Substantial evidence supports the ALJ's conclusion that Plaintiff had less than marked limitation of function in the domain of acquiring and using information.  Even if the Court were to find Plaintiff's argument convincing, it would make no difference to the outcome of the case, because it would only mean that Plaintiff had one domain with "marked" limitation of function, and the regulation requires two in order to find disability.[5]

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence on

---

[5]Plaintiff suggests that the speech language pathologist's statement that his score was two standard deviations below the mean did not preclude its being three standard deviations below the mean (thus amounting to an "extreme" limitation of function).  (Br. 4-5.)  That suggestion is illogical.  It is also statistically inaccurate; three standard deviations below the mean would be 55.

the record as a whole which supports the decision of the ALJ.  E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  Richardson v. Perales, 402 U.S. at 401; see also Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

For these reasons, the decision of the Commissioner is affirmed.  Judgment will be entered for Defendant, dismissing Plaintiff's complaint with prejudice.

IT IS SO ORDERED this 1st day of May, 2008.


_____
UNITED STATES MAGISTRATE JUDGE